Ahren A. Tiller, Esq. [SBN: 250608]
BLC Law Center, APC
1230 Columbia St., Ste 1100
San Diego, CA 92101
Phone (619) 894-8831
Facsimile: (866) 444-7026
Email: Ahren.Tiller@blc-sd.com

Attorneys for Plaintiff
AILEEN MARQUEZ

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| AILEEN MARQUEZ,<br><br>                    Plaintiff,<br><br>        vs.<br><br>FINWISE BANK; OPPORTUNITY FINANCIAL, LLC d/b/a OPPLOANS; and DOES 1-10,<br><br>                    Defendant, | Case No.: **'21 CV 1394 L    BLM**<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>**1)    THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CAL. CIV. CODE §§ 1788-1778.32);**<br><br>**2)    NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. § 227);**<br><br>**3)    VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. § 227);**<br><br>**4)    VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT (15 U.S.C. § 1692); and**<br><br>**5)    CALIFORNIA'S UNFAIR COMPETITINO LAW (CAL. BUS & PROF. CODE §§ 17200);**<br><br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT FOR DAMAGES

## INTRODUCTION

1. AILEEN MARQUEZ (hereinafter referred to as "Plaintiff"), by and through her Counsel of record, brings this action against FINWISE BANK, (hereinafter referred to as "FinWise"), OPPORTUNITY FINANCIAL, LLC d/b/a/ OPPLOANS (hereinafter referred to as "OppLoans"), and Does 1-10 (hereinafter collectively referred to as "Defendants"), pertaining to actions by Defendants to unlawfully collect a debt allegedly owed by Plaintiff, including but not limited to, collection via the use of an Automated Telephone Dialing System ("ATDS") and/or Artificial and/or Prerecorded Voice in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA" [Cal. Civ. C. §§ 1788-1788.32]), thereby invading Plaintiff's privacy, and causing Plaintiff damages.

2. After finding "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," Congress passed the Fair Debt Collection Practices Act (hereinafter "FDCPA") in 1977 to eliminate abusive debt collection practices by debt collectors and to ensure that those debt collectors who refrain from using abusive practices are not competitively disadvantaged.[1]

3. The California legislature determined that unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system. The legislature further determined there is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty, and due regard for the rights of others. The legislature's explicit purpose of enacting the Rosenthal Fair Debt Collection Practices Act of California (hereinafter "RFDCPA") was to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection

---

[1] 15 USC §1692(a)

of consumer debts and to require debtors to act fairly in entering into and honoring such debts.[2]

4. The Telephone Consumer Protections Act (hereinafter referred to as "the TCPA") was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs.*, LLC, 132 S. Ct. 740, 744 (2012).

5. In enacting the TCPA, Congress specifically found that "the evidence presented to Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call . . ." *Mims,* 132 S. Ct., at 744.

6. As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls similar to this one:

> The Telephone Consumer Protection Act … is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

> *Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637, 638 (7th Cir. 2012)

7. Plaintiff makes the allegations contained herein on information and belief, except as to those allegations regarding herself, which are based upon personal knowledge.

## JURISDICTION AND VENUE

8. This action is based on Defendants' violations of the FDCPA, 15 U.S.C. § 1692 *et. seq.*, the TCPA, 47 U.S.C. § 227 *et seq.*, and the RFDCPA, Cal. Civ. C. §§

---

[2] CA Civil Code §§ 1788.1(a)-(b)

1788 - 1788.32.

9.   This Court has jurisdiction over Defendants, pursuant to 28 U.S.C. § 1331, as the unlawful practices alleged herein involve a federal question under the FDCPA and the TCPA.

10.   This Court has jurisdiction over Defendants, as the unlawful practices alleged herein occurred in California, in the County of San Diego.

11.   This Court further has supplemental jurisdiction over Plaintiff's California Causes of action, pursuant to 28 U.S.C. § 1367(a), as Plaintiff's California state law claims are so related to Plaintiff's Federal claims in this action, that they form part of the same case or controversy.

12.   Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1)-(2), because all or some of the unlawful practices and violations of law alleged herein occurred and are occurring in the County of San Diego, California.  Furthermore, Defendants regularly conducts business within State of California, County of San Diego, and Plaintiff resides in San Diego County, California.

## PARTIES

13. Plaintiff is, and was at all times mentioned herein, a natural person residing in the County of San Diego, in the State of California.

14. Plaintiff is a natural person from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiff, and therefore Plaintiff is a "debtor" as that term is describe by Cal Civ. Code §1788.2(h).

15. Plaintiff is allegedly obligated to pay a debt, and is a "consumer" as that term is defined by 15 U.S.C. §1692(a)(3).

16. Defendant FinWise Bank is, and at all times mentioned herein was, a National Banking Association, headquartered in Utah and doing business throughout the

country, including this District.

17. Defendant FinWise Bank's primary business operations are the issuance of unsecured consumer loans, credit cards, and consumer checking and savings accounts.

18. Defendant Opportunity Financial, LLC d/b/a/ OppLoans ("OppLoans"), is a Delaware Limited Liability Company, headquartered in Illinois, and doing business throughout the country, including this District.

19. Defendant OppLoans is, and at all times discussed in this Complaint, was registered with the California Secretary of State to do business within California.

20. Defendant OppLoans' primary business operations are the issuance of unsecured consumer loans, the marketing of consumer loans for its partner banks, including Defendant FinWise, and the collection on behalf of both itself and its partner banks of those unsecured loans.

21. Defendant OppLoans regularly attempts to collect debts on behalf of both itself and other lenders (which includes FinWise) using the mail, electronic communication, and the telephone, to collect "consumer debts" allegedly owed to it, as that term is defined by Cal. Civ. Code §1788.2(f).

22. For example, when alleged debts owed to Defendant FinWise are delinquent, Defendant OppLoans regularly seeks to collect on those delinquent debts through the mail, telephone, and via other means.  Defendant OppLoans is therefore a "debt collector" as that term is defined by 15 U.S.C. §1692(a)(6).

23. When individuals owe FinWise debts for regular monthly payments on consumer loans and credit cards, and other similar obligations, Defendant OppLoans collects on those consumer debts through the telephone, which include the use of an ATDS and/or prerecorded voice message and/or automated voice telephone calls.

24. Therefore, Defendant OppLonas is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c), and engages in "debt collection" as that term is

1  defined by Cal. Civ. Code §1788.2(b).

2  25. At all times relevant hereto, Defendants used, controlled and or operated an

3  "automatic telephone dialing system" ("ATDS") as that term is defined by 47

4  U.S.C. § 227(a)(1) and/or placed calls to Plaintiff's cellular telephone using an

5  automated and/or prerecorded voice ("Recorded Voice") as that term is defined in

6  47 U.S.C. § 227(b)(1)(A).

7  26. Defendants are, and all times mentioned herein were both corporations and

8  thus "persons," as that term is defined by 47 U.S.C. § 153(39).

9  27. This case involves money, property, or their equivalent, due or owing or alleged

10  to be due or owing from a natural person by reason of a consumer credit

11  transaction.  Thus, this action arises out of a "consumer debt" and "consumer

12  credit" as those terms are defined by Cal. Civ. Code §1788.2(f).

13

14  ### GENERAL ALLEGATIONS

15  28. Plaintiff realleges and incorporates by reference all preceding paragraphs,

16  inclusive, as if fully set forth herein.

17  29. Defendant OppLoans is a financial services company that markets and provides

18  predatory high-interest, short-term loans to consumers.

19  30. Defendant OppLoans uses deceptive and false marketing to misrepresent the

20  benefits of its loans, while failing to disclose important details about the loans'

21  costs and risks.

22  31. For example, Defendant OppLoans carry interest rates as high as 198%, in

23  violation of Cal. Civ. C. § 1789.30 and/or Cal. Fin. C. §§. 22303 and 22304.5.

24  32. Defendant OppLoans' own records reflect that at least 33% of the loans it

25  originates will default, yet it fails to disclose this information to consumers.

26  33. On information and belief, OppLoans' business consists entirely of online lending

27  of subprime loans to consumers.

28  34. On or about 2018, OppLoans partnered with Defendant FinWise to start offering,

providing, and servicing loans to California residents.

35. Defendant FinWise is a Utah chartered National Banking Association.

36. On information and belief, the purpose of the agreement was to allow Defendant OppLoans to "use" FinWise to make loans to California residents, which OppLoans would otherwise not be able to make.

37. On information and belief, Defendant OppLoans conducts this lending scheme through various wholly owned subsidiary entities, which function as special purpose vehicles created by Defendant OppLoans to exercise constructive ownership and control of the loans it provides through Defendant FinWise. Defendant OppLoans exercises and maintains full "constructive ownership and control" of the receivables shortly after the loans were originated by Defendant FinWise.

38. Although Defendants state to consumers that Defendant FinWise is the "bank" issuing the loans describe herein, in fact its Defendant OppLoan's that truly fund the loans, using Defendant FinWise solely as a "pass through" entity, in order to circumvent state banking laws, and issue loans in which OppLoans would not lawfully be able to provide to consumers on their own.

39. The subject scheme by Defendants allows them to make loans that Defendant OppLoans could otherwise not make on its own via deceiving the public, and insulates Defendants from regulation and suit, through the use of multiple subsidiary shell entities.

40. Defendant OppLoaans deceptively markets its loans, including but not limited to, by misrepresenting the true party originating the loan, by stating that its loans are more affordable than other payday loans, by misrepresenting the benefits of the loans, and failing to disclose the rates of default and the risks of said loans.

41. For example, a typical payday lender usually charges $15-$20 per $100 borrowed, so for a $1,000.00 loan, typical fees and charges would be $150.00

42. Yet if a consumer borrows $1,000.00 from FinWise, at an APR of 160%, and a

repayment term of 9 months (these are the typical repayment terms), then the consumer would have to repay at least $734.63 in fees and costs for a total of $1,734.63.

43. These lending practices are unlawful, false, and misleading as Defendant OppLoans specifically advertises that its loans have a lower cost than traditional payday loans.

44. On or about December 9, 2018, Plaintiff took out an unsecured loan with Defendant FinWise for $4,000.00 (hereinafter referred to as the "2018 Loan.")

45. Although FinWise was the purported originator and funder of the Loan, Defendant OppLoans had virtually all direct contact with Plaintiff.

46. Plaintiff made monthly payments of $621.00 on the 2018 Loan on time, and by August of 2019 she had paid approximately $4,968.00, yet still had a balance allegedly owed of approximately $2,487.00.

47. The effective interest rate of the original loan was in excess of 130%.

48. On or about August 30, 2019, Plaintiff rolled the remaining balance of the 2018 Loan into a new Loan, again funded and originated by Defendant FinWise (hereinafter referred to as the "Subject Loan").

49. Plaintiff made payments toward the Subject Loan from August 30, 2019 through January 3, 2020, in the amount of $680.00 per month, for a total of $4,080.00.

50. On or about early 2020, Plaintiff unfortunately fell on financial hardship and was unable to maintain the regular monthly payments.

51. The effective interest rate of the Subject Loan was in excess of 130%.

52. Defendant FinWise selected and contracted with Defendant OppLoans to have OppLoans work as Defendant FinWise's agent or sub-agent for the purposes of collecting upon a Subject Loan.

53. The actions by Defendant OppLoans described herein were within the anticipated scope of its agency relationship with Defendant FinWise, based on the reliability, accuracy of information, timeliness, and past performance of Defendant

OppLoans on substantially similar matters.

54. Upon going into default on the Subject Loan, agents for Defendant OppLoans called Plaintiff multiple times and requested payment through the use of an ATDS, while often using a Recorded Voice on said calls.  Agents for Defendant would contact Plaintiff 3-4 times per day, as often as every day.

55. The aforementioned collection calls were made to Plaintiff's cellular telephone

56. In response to the multiple harassing collection calls via the use of an automated and/or prerecorded voice, Plaintiff sought out and retained an attorney to represent her with regards to the debts allegedly owed to Defendant FinWise and collected upon by Defendant OppLoans.

57. On December 14, 2020, Plaintiff answered an incoming call from Defendant OppLoans and spoke to an agent named Nigel, as well as a supervisor named Tara. On said call, Plaintiff explained to both the agent and the supervisor that Plaintiff retained an attorney and that Defendant OppLoans should not be contacting her directly.  Plaintiff expressly revoked the right for OppLoans to contact her in any manner, including via the use of any ATDS and/or prerecorded voice and/or automated voice telephone call.

58. On December 22, 2020, an associate attorney at Plaintiff's Counsel's office, drafted and mailed a Cease-and-Desist letter to Defendant OppLoans, whereby Plaintiff's Attorney stated in writing that Plaintiff was revoking consent to call her via the use of an ATDS, that that Plaintiff had retained Counsel, and that Defendants needed to cease calling Plaintiff pursuant to the RFDCPA (hereinafter referred to as the "Letter").  Said Letter referenced the last four digits of Plaintiff's social security number next to her name in order to help identify Plaintiff.  Said Letter clearly informed Defendants that Plaintiff was represented by Counsel, and thus the Letter constituted written notice pursuant to Cal. Civ. Code §§ 1788.14(c) that Plaintiff was represented by an attorney with respect to any debt allegedly owed to or serviced by Defendant, and a request was thereby

made that all communications regarding this alleged consumer debt must be directed exclusively to Plaintiff's attorney, and said Letter clearly revoked any prior consent to contact Plaintiff via the use of an automated dialing system phone, text, or other method, including but not limited to calls with a pre-recorded or automated voice messages.

59. Despite Defendant OppLoans' receipt of the Letter, Defendant OppLoans continued to call Plaintiff's cellular telephone and request payments through the use of an ATDS and, frequently, using a prerecorded voice, and/or automated voice, often 3-4 times per day, as often as every day.

60. Despite receipt of the Letter sent to Defendant OppLoans from Plaintiff's Counsel's office, as well as the oral communications from Plaintiff that clearly put Defendant OppLoans on notice that Plaintiff had revoked consent to be called at all, including via an ATDS and/or prerecorded voice and/or automated voice, and had retained counsel regarding the subject debt, representatives of Defendants continued to call Plaintiff through the use of prerecorded voice and/or automated voice, often 3-4 times per day, as often as every day.

61. As Defendants refused to abide by the law and cease contacting Plaintiff directly, Plaintiff's Counsel sent out a second Letter on April 9, 2021, (hereinafter referred to as the "Second Letter") whereby Plaintiff's Attorney *again* stated in writing that Plaintiff was revoking consent to call her via the use of an ATDS, that Plaintiff had retained Counsel, and that Defendant needed to cease calling Plaintiff pursuant to the RFDCPA ("Second Letter").  Said Second Letter also referenced the last four digits of Plaintiff's social security number next to her name in order to help identify Plaintiff.

62. Despite having received oral notification from Plaintiff, along with both the December 22, 2021 First Letter and the April 9, 2021 Second Letter, Defendants continue to call Plaintiff to date, often 3-4 times per day, as often as every day, at times in rapid succession, which is indicative of a computerized ATDS and/or

automated voice and/or prerecorded voice.

63. Defendants, or their agents or representatives, have contacted Plaintiff on her cellular telephone over two-hundred and fifty (250) times since December 14, 2020, including through the use of an ATDS and/or Recorded voice as those terms are defined in 47 U.S.C. § 227(a)(1) and/or 47 U.S.C. § 227(b)(1)(A).

64. Defendants have called Plaintiff over two-hundred and fifty (250) times in total, after Plaintiff communicated orally and in writing that she revoked any prior consent to call her via the use of an ATDS and/or Recorded Voice and had retained Counsel for any debts owed to Defendants. The December 22, 2020 and April 9, 2021 Letters even contained and an explicit warning that all direct contact with Plaintiff should cease pursuant to the RFDCPA.

65. Many of Defendants' calls to Plaintiff after receiving the letter contained an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

66. The multiple calls made by Defendants or its agents after oral and written notification to cease and revocation of any consent by Plaintiff, were therefore made in violation of 47 U.S.C. § 227(b)(1).

67. Despite receipt of the First and Second Letters from Plaintiff's Attorney (both sent to Defendant OppLoans' specified mailing address), and verbal notice from Plaintiff to cease calling Plaintiff's cellular telephone via the use of an ATDS and/or Recorded Voice, all of which provided irrefutable notice that Plaintiff had revoked consent to call her cellular telephone by any means and that she had retained Counsel regarding these alleged debts, Defendants continue to contact Plaintiff repeatedly to date.

# CAUSES OF ACTION

## I.

## FIRST CAUSE OF ACTION

**Violations of California Rosenthal Fair Debt Collection Practices Act**

(California Civil Code § 1788.14(c))

[As to All Defendants]

68. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

69. The acts of Defendant OppLoans alleged herein, were all made as the agent(s) and/or sub-agent(s) of Defendant FinWise, and said acts were committed in the scope of the agent(s) and/or sub-agent(s) employment and in furtherance of Defendant FinWise's interests.

70. When Plaintiff orally stated to representatives for Defendants that she was represented by Counsel, Defendants were aware, or reasonably should have been aware, that Plaintiff was represented by an attorney, and that Plaintiff was exerting her rights not to be contacted directly regarding this debt.

71. When Plaintiff's Counsel sent both the December 22, 2020 and April 9, 2021 cease-and-desist Letters to Defendant OppLoans, Defendants were aware, or reasonably should have been aware, that Plaintiff was represented by an attorney.

72. Cal. Civ. Code §1788.14(c) provides in relevant part,

No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:

(c) Initiating communications, other than statements of account, with the debtor with regard to the consumer debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by such attorney with respect to the consumer debt and such notice includes the attorney's name and address and a request by such attorney that all communications regarding the consumer debt be addressed to such attorney, unless the attorney fails to answer correspondence, return telephone calls, or discuss the obligation in

question.   This subdivision shall not apply where prior approval has been obtained from the debtor's attorney, or where the communication is a response in the ordinary course of business to a debtor's inquiry.

73. By calling Plaintiff on her cellular phone over two-hundred and fifty (250) times after being informed both orally by Plaintiff and twice in writing from Plaintiff's Counsel, Defendants violated Cal. Civ. Code §1788.14(c).

74. As a result of the constant collection calls by Defendants, Plaintiff has experienced anxiety, irritability, and has at times been unable to calm down as the constant and harassing collection calls by Defendants are overwhelming. Therefore, Plaintiff has suffered emotional distress because of Defendants' violations of Cal. Civ. Code §1788.14(c).

## II.

### SECOND CAUSE OF ACTION

### Negligent Violations of the TCPA

(47 U.S.C. § 227 et. seq.)

[As to All Defendants]

75. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

76. The acts of Defendant OppLoans alleged herein, were all made as the agent(s) and/or sub-agent(s) of Defendant FinWise, and said acts were committed in the scope of the agent(s) and/or sub-agent(s) employment and in furtherance of Defendant FinWise's interests.

77. Through both her oral communication with Defendants, and Plaintiff's Counsel's two letters to Defendant OppLoans, Plaintiff revoked any alleged consent for Defendants or its agents or representatives to call Plaintiff on her cellular telephone via the use of an ATDS and/or Recorded Voice.

78. The foregoing acts and omissions of Defendants constitute numerous and

multiple negligent violations of the TCPA, including but not limited to each one of the above-cited provisions of 47 U.S.C. § 227, et. seq.

79. As a result of the constant unlawful calls by Defendants, Plaintiff has experienced anxiety, irritability, and has at times been unable to calm down as the constant and harassing collection calls by Defendants are overwhelming.  Therefore, Plaintiff has suffered emotional distress because of Defendants' violations of 47 U.S.C. § 227 *et. seq.*

80. As a result of Defendants' negligent violations of 47 U.S.C. §227*, et. seq.,* Plaintiff has suffered decreased use of her cellular telephone, difficulty using said phone for it intended purpose, reduced communication and interaction with friends and family, and Plaintiff has incurred additional monetary costs, including both cellular plan charges as well as smartphone application costs, as a direct result of Defendants' unlawful conduct.

81. As a result of Defendants' negligent violations of 47 U.S.C. §227*, et. seq.,* Plaintiff is entitled to an award of $500 in statutory damages, for each one of their over two-hundred and fifty (250) calls made in violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

82. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

### III.

### THIRD CAUSE OF ACTION

### Knowing and/or Willful Violations of the TCPA

(47 U.S.C. § 227 *et. seq.*)

[As to All Defendants]

83. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

84. The acts of Defendant OppLoans alleged herein, were all made as the agent(s)

and/or sub-agent(s) of Defendant FinWise, and said acts were committed in the scope of the agent(s) and/or sub-agent(s) employment and in furtherance of Defendant FinWise's interests.

85. Through both her oral communication with Defendants, and Plaintiff's Counsel's two letters to Defendant OppLoans, Plaintiff revoked any alleged consent for Defendants or their respective agents or representatives to call Plaintiff on her cellular telephone via the use of an ATDS and/or Recorded Voice.

86. The foregoing acts of the Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

87. As a result of the constant unlawful collection calls by Defendants, Plaintiff has experienced anxiety, irritability, and has at times been unable to calm down as the constant and harassing collection calls by Defendants are overwhelming. Therefore, Plaintiff has suffered emotional distress as a direct and proximate result of Defendants' violations of 47 U.S.C. § 227 *et. seq.*

88. As a result of Defendants' willful and/or knowing violations of 47 U.S.C. §227*, et. seq.,* Plaintiff has suffered decreased use of her cellular phone, difficulty using said phone for it intended purpose, reduced communication and interaction with friends and family, and Plaintiff has incurred additional monetary costs, including both cellular plan charges as well as smartphone application costs, as a direct and proximate result of Defendants' unlawful conduct

89. Therefore, since Defendants or their agents or representatives continued to call Plaintiff despite indisputably being informed not to call Plaintiff on multiple occasions through multiple different means, and that Plaintiff had revoked any alleged prior consent to call Plaintiff's cellular telephone via the use of an ATDS and/or Recorded Voice, Defendants' acts were willful.

90. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. §227, et. seq., the Plaintiff is entitled to an award of $1,500 in statutory damages, for

each one of their over two-hundred and fifty (250) knowing and/or willful violations of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(C).

91. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

## IV.

### FOURTH CAUSE OF ACTION

### Violations of the Fair Debt Collection Practices Act

(15 U.S.C. § 1692 *et. seq.*)

[As to All Defendants]

92. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

93. The acts of Defendant OppLoans alleged herein, were all made as the agent(s) and/or sub-agent(s) of Defendant FinWise, and said acts were committed in the scope of the agent(s) and/or sub-agent(s) employment and in furtherance of Defendant FinWise's interests.

94. When Plaintiff orally stated to representatives for Defendants that she was represented by Counsel, Defendants were aware, or reasonably should have been aware, that Plaintiff was represented by an attorney, and that Plaintiff was exerting her rights not to be contacted directly regarding this debt

95. When Plaintiff's Counsel sent both the December 22, 2020 and April 9, 2021 cease-and-desist Letters to Defendant OppLoans, Defendants were aware, or reasonably should have been aware, that Plaintiff was represented by an attorney.

96. 15 U.S.C. § 1692c(a)(2) states in relevant part,

> (a) Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt— (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period

1
2

of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer;

3   97. By calling Plaintiff on her cellular phone over two-hundred and fifty (250) times

4       after being informed both orally by Plaintiff and twice in writing from Plaintiff's

5       Counsel, Defendants violated 15 U.S.C. § 1692c.

6   98. As a result of the constant unlawful calls by Defendants, Plaintiff has experienced

7       anxiety, irritability, and has at times been unable to calm down as the constant

8       and harassing collection calls by Defendants are overwhelming.  Therefore,

9       Plaintiff has suffered emotional distress as a direct and proximate result of

10      Defendants' violations of 15 U.S.C. § 1692c.

11  99. As a result of Defendants' willful and/or knowing violations of 15 U.S.C. §

12      1692c, Plaintiff has suffered decreased use of her cellular phone, difficulty using

13      said phone for it intended purpose, reduced communication and interaction with

14      friends and family, and Plaintiff has incurred additional monetary costs, including

15      both cellular plan charges as well as smartphone application costs, as a direct

16      result of Defendants' unlawful conduct.

17

18                                      **V.**

19                          **FIFTH CAUSE OF ACTION**

20                    **California's Unfair Competition Law**

21                    (Cal. Bus & Prof. Code §§ 17200, *et. seq.*)

22                          [As to All Defendants]

23  100.   Plaintiff realleges and incorporates by reference all preceding paragraphs,

24      inclusive, as if fully set forth herein.

25  101. Plaintiff and Defendants are each "person(s)" as that term is defined by Cal.

26      Bus. & Prof. C. § 17201.

27  102. Cal. Bus & Prof. C. § 17204 authorizes a private right of action on both an

28      individual and representative basis.

103. Cal. Bus. & Prof. C. § 17204, a provision of the Unfair Competition Law ("UCL"), confers standing to prosecute actions for relief not only on the public officials named therein, but on private individuals (i.e., "any person acting for the interests of itself, its members or the general public.") Thus, a private Plaintiff who has suffered a financial injury may sue to obtain relief for the Public at large.

104. "Unfair competition" is defined by Bus. & Prof. Code § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

105. An "injunction" is "the primary form of relief available under the UCL to protect consumers from unfair business practices." *In re Tobacco II Cases*, 46 Cal.4th 298, 319 (2009); *see also*, *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 789 (2010) ("[i]f a party has standing under" the UCL, "it may seek injunctive relief.")

### A. *"Unlawful" Prong*

106. By knowingly and intentionally issuing loans at interest rates that are unconscionable, and objectively unreasonable, Defendants have routinely engaged in an unlawful business practice.

107. The lending practices described herein by Defendants violate Cal. Civ. C. § 1789.30 and/or Cal. Fin. C. §§ 22303 and 22304.5.

108. The lending practices described herein also violate Cal. Civ. Code § 1670.5 as the underlying loan agreements provide for unlawful terms. *See De La Torre v. Cashcall Inc.*, No. S241434, 2018 Cal. LEXIS 5749, at *43 (Aug. 13, 2018).

109. Because Defendants' business entailed violations of Cal. Civ. C. § 1789.30 and/or Cal. Fin. C. §§. 22303 and 22304.5, Defendants violated California's

Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq*., which provides a cause of action for an "unlawful" business act or practice perpetrated on consumers.

110. Defendants violated Cal. Bus. & Prof. Code §§17200, *et. seq.* through unfair, unlawful, and deceptive business practices, Defendants violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq*., which provides a cause of action for an "unlawful" business acts or practices perpetrated on consumers.

111. Defendants had other reasonably available alternatives to further their legitimate business interests, other than the conduct described herein, such as continuing its massive campaign to provide loans to consumers at unreasonably high interest rates designed to perpetrate default and a cycle of perpetual payments.

112. Plaintiff suffered actual monetary financial injury, in that her payments made to Defendants, as is described in paragraph 46, which were for amounts much higher than they would have been but for Defendants' unlawful interest rates charged to Plaintiff.

113. Further, although Defendants state to consumers that Defendant FinWise is the "bank" issuing the loans describe herein, in fact its Defendant OppLoan's that truly fund the loans, using Defendant FinWise solely as a "pass through" entity, in order to circumvent state banking laws, and issue loans in which OppLoans would not lawfully be able to provide to consumers on their own. The subject scheme is unlawful, in that it violates California banking regulations, which forbids OppLoans (i.e. an entity that is not a National Banking Association) to make loans that they could otherwise not make on its through the use of multiple subsidiary shell entities.

114. Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

115.   Plaintiff seeks public injunctive relief to benefit the general public directly by bringing an end to Defendants' unlawful business practices which threaten future injury to the general public.

**B. *"Unfair" Prong***

116. Defendants' actions and representations constitute an "unfair" business act or practice under § 17200 in that Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

117. Without limitation, the business practices describe herein are "unfair" and shock the conscience because they offend established public policy, violate California statutory protections, and are objectively immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that Defendants' conduct caused Plaintiff and the general public, to incur debts as a result of an unlawfully charged interest rate.

118. The excessively high APR sought to be collected by, or actually charged by, Defendants has a tendency to harm the general public.

119. Despite Defendants' express representation on its website that its loans are "better than" and "cost less" than most payday loans, in fact they cost much more.  Thus, Defendants' advertising is unfair and deceptive, and threatens an ongoing future harm to the general public.

120. Defendant could and should have furthered their legitimate business interests by not perpetrating fraud on both Plaintiff and the general public by charging an unlawful interest rate, and/or complying with federal and state banking laws whereby the true entity would originate the subject loans – not a shell company.

121. Plaintiff, as well as the general public could not have reasonably avoided the injury suffered by each of them.

122. Defendants have a strong financial incentive to continue to require an APR in excess of 90% on future loans, thereby receiving more money than its compliant competitors on similar loans where the APR does not exceed 90%.

123. Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date, and is a source of considerable revenue to Defendants.

124. Plaintiff seeks public injunctive relief to benefit the general public directly by bringing an end to Defendants' unfair business practices which threaten future injury to the general public. Specifically, an injunction requiring Defendants to (1) immediately cease entering into loan agreements that exceed the applicable amounts set by law, (2) cease using FinWise to assist OppLoans in issuing loans in states it could not lawfully normally do so; and (3) discontinue collecting on loans already originated with interest rates exceeding 90% APR, as such injunction would benefit the public at large.

125. Plaintiff seeks public injunctive relief to benefit the general public directly by bringing an end to Defendants' unfair business practices which threaten future injury to the general public. Specifically, an injunction requiring Defendants to truthfully disclose the cost of their loan products compared to similar payday loan lenders, as well as truthfully disclose the true source of funds and the relationship between Defendant OppLoans and Defendant FinWise.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff having set forth the claims for relief against Defendants herein, respectfully request this Court enter a Judgment against all Defendants jointly and severally as follows:

a.  As to the First Cause of Action, an award of actual damages pursuant to Cal. Civ. Code §1788.30(a) according to proof.

b.  As to the First Cause of Action, an award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code §1788.30(b).

c.  As to the First Cause of Action, an award of reasonable attorney's fees and costs pursuant to Cal. Civ. Code §1788.30(c).

d.  As to the Second Cause of Action, $500 in statutory damages for each one of Defendants' over two-hundred and fifty (250) negligent violations of 47 U.S.C. §227(b)(1), pursuant to 47 U.S.C. § 227(b)(3)(B).

e.  As to the Second Cause of Action, injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A);

f.  As to the Third Cause of Action, $1,500.00 in statutory damages for each and every one of Defendants' willful and/or knowing two-hundred and fifty (250) violations of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(C).

g.  As to the Fourth Cause of Action, an award of actual damages pursuant 15 U.S.C. § 1692k(a)(1).

h.  As to the Fourth Cause of Action, an award of statutory damages of $1,000.00 pursuant to pursuant 15 U.S.C. § 1692k(a)(2)

i.  As to the Fourth Cause of Action, an award of reasonable attorney's fees and costs pursuant to pursuant 15 U.S.C. § 1692k(a)(3)

j.  As to the Fifth cause of action, Public injunctive relief through the role as a Private Attorney General, pursuant to Cal. Bus. & Prof. Code §§ 17204, permanently and immediately prohibiting Defendants from engaging in the unlawful conduct alleged herein;

k.  As to the Fifth Cause of Action temporary, preliminary and/or permanent order for injunctive relief requiring Defendant to: (i) cease charging an unlawful interest rate on its loans; (ii) and institute corrective advertising and providing written notice to the public of the unlawfully charged interest rate on prior loans; and (iii) institute corrective advertising and providing written notice to consumers regarding the cost of Defendants' loans compared to traditional payday loans; and (iv) institute corrective advertising and providing written notice to regarding the true relationship between each Defendant and disclosure of their respective roles in funding the loans.

l.  Exemplary and/or punitive damages for intentional misrepresentations pursuant to, *inter alia*, Cal. Civ. Code § 3294; and

m. For such other and further relief as the Court may deem just and proper.


Dated: August 4, 2021                    By:    */s/ Ahren A. Tiller*
                                                Ahren A. Tiller, Esq.
                                                BLC Law Center, APC
                                                Attorneys for Plaintiff
                                                AILEEN MARQUEZ

1

## **DEMAND FOR JURY TRIAL**

2        Pursuant to the Seventh Amendment to the Constitution of the United States of

3  America, Plaintiff is entitled to, and demands a trial by jury on all issues triable by

4  jury.

5

6  Dated: August 4, 2021       By:    */s/ Ahren A. Tiller*

7                                    Ahren A. Tiller, Esq.
BLC Law Center, APC

8                                    Attorneys for Plaintiff
AILEEN MARQUEZ

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*AILEEN MARQUEZ v. FINWISE BANK ET. AL., - Complaint for Damages*